PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2114
_____

HECTOR DURAN-PICHARDO,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A037-057-349)
Immigration Judge:  Honorable Andrew Arthur
_____

Argued January 13, 2012

Before:  MCKEE, *Chief Judge*, FUENTES and JORDAN
*Circuit Judges*

(Filed: August 31, 2012)

1

Herbert C. Shelley
Patricia B. Palacios
Jeremy Glen (Argued)
STEPTOE & JOHNSON
1330 CONNECTICUT
AVE., N.W.
WASHINGTON, DC 20036

*Counsel for Appellant*

Tony West
Assistant Attorney General
Civil Division

Luis E. Perez
Senior Litigation Counsel
Office of Immigration
Litigation

Rachel L. Browning
(Argued)
Trial Attorney
Office of Immigration
Litigation
Civil Division,
Department of Justice
P.O. Box 878,
Ben Franklin Station
Washington, DC 20044

*Counsel for Appellee*

_____

OPINION
_____

MCKEE, *Chief Judge*.

Hector Duran-Pichardo petitions for review of the final order of his removal issued by the Board of

Immigration Appeals.  For the reasons that follow, we will deny the petition.

## I.

Duran-Pichardo, is a native of the Dominican Republic and he was lawfully admitted to the United States as a legal permanent resident in 1981.  He was married in 1988, and he subsequently fathered two children.[1]

On July 3, 1997, Duran-Pichardo applied for naturalization as a United States citizen.  On May 11, 1998, he completed his examination under oath.[2]  Therefore the only thing that remained before he could become a naturalized citizen was taking the public oath of allegiance and renunciation.[3]  After he successfully completed the

---

[1] His wife became a naturalized citizen in 1998.  Because his two children from that marriage were born in the United States, they are U.S. citizens.

[2] The examination under oath authorizes a designated examiner to take testimony pertaining to admissibility and citizenship and permits the examiner to make a recommendation regarding the applicant's fitness for naturalization.  *See* 8 U.S.C. §1446(b); *see also*, 8 U.S.C. §1443(a) ("Such examination shall be limited to inquiry concerning the applicant's residence, physical presence in the United States, good moral character, understanding of and attachment to the fundamental principles of the Constitution of the United States, ability to read, write, and speak English, and other qualifications to become a naturalized citizen as required by law, and shall be uniform throughout the United States.").

[3] Congress commanded that an alien must take a specific oath before the Attorney General or appropriate court prior to becoming a naturalized citizen.  *See* 8 U.S.C. § 1448.  The oath includes a pledge to:  "support the Constitution of the United States; (2) . . . renounce . . . all allegiance . . . to any foreign. . . sovereignty . . . (3). . . support and defend the Constitution and the laws of the United States . . . [and] (4) to

examination, Duran-Pichardo was given a document that stated: "[the] INS will notify you later of the final decision on your application."

When the "final decision" did not come in the mail, Duran-Pichardo made repeated calls to the agency in an attempt to be scheduled to take the Oath. According to Duran-Pichardo, he subsequently learned that part of his naturalization file had been mislabeled and he was ultimately advised that all or part of his naturalization file had been lost. Although we cannot be sure of exactly what happened to his file, it is clear that Duran-Pichardo never took the Oath.

On March 17, 2008, nearly ten years after Duran-Pichardo satisfactorily completed his naturalization examination under oath, he pled guilty to conspiracy to distribute and possess narcotics and possession with intent to distribute cocaine and was sentenced to 51 months' imprisonment.

On October 26, 2008, the Government instituted removal proceedings against Duran-Pichardo on the grounds that he was an alien who had been convicted of a controlled substance violation under 8 U.S.C. §1227(a)(2)(B)(i) and an aggravated felony under 8 U.S.C. §1227(a)(2)(A)(iii). Although he did not challenge the convictions and conceded that they would otherwise make him eligible for removal, he argued that he was not removable because his 1997 naturalization application had been finalized. He also argued that, to the extent his naturalization application had not been finalized, he should not be removed because the Government's own actions precluded him from taking the Oath and thereby prevented his naturalization and citizenship.[4]

---

bear . . . allegiance to the [United States] . . ." (the "Oath"). *Id.*

[4] *See* 8 C.F.R. 335.3(a) ("A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization . . ..").

4

While removal proceedings were pending, Duran-Pichardo requested a hearing on his naturalization application and attached evidence that his naturalization file had been mislabeled and/or lost.  On September 3, 2009, the Government moved to consolidate two naturalization files under Duran-Pichardo's name—conceding, at a minimum, that Duran-Pichardo's primary naturalization file did not contain all pertinent information.[5]

On July 31, 2009, despite the pending removal proceedings, the Government formally denied Duran-Pichardo's application for naturalization which had been pending since 1997.[6]  The Government based that denial on his 2008 convictions, and concluded that those convictions made him ineligible for naturalization.  His appeal of that decision was denied.

Thereafter, the Immigration Judge presiding over the removal proceedings found Duran-Pichardo removable under 8 U.S.C. §§1227(a)(2)(A)(iii) and (B)(i), and ordered him removed from the United States to the Dominican Republic.  The BIA dismissed Duran-Pichardo's appeal of that order because it found that it lacked jurisdiction to

---

[5] The Government did not, however, concede that any administrative error was responsible for its failure to schedule Duran-Pichardo for a ceremony to take the Oath.

[6] The Government's denial of Duran-Pichardo's naturalization application subsequent to the initiation of removal proceedings exceeded its statutory authority.  *See* 8 U.S.C. §1429 ("[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act.").  Though troubling, it does not alter the outcome of this matter.  As discussed more fully throughout this opinion, because Duran-Pichardo had not taken the Oath prior to his convictions, he remains an alien subject to removability.  The subsequent and ill-conceived denial of his naturalization application does not affect his removal.

decide the issues he raised. Nevertheless, the BIA stated that the Government could remove Duran-Pichardo even though the delay in scheduling him to take the Oath resulted from the Government's mishandling of his file. This Petition for Review followed.

## II.

On appeal, Duran-Pichardo argues -with some justification - that absent the Government's own error, he would have taken the Oath and become a naturalized citizen before his convictions and thus would no longer be removable. He therefore claims that he: (i) obtained a protected liberty interest in the grant of his naturalization application; (ii) is entitled to an order granting his naturalization application; and/or (iii) is entitled to a *nunc pro tunc* review of his naturalization application so that it may be finalized (and presumably granted) without consideration of convictions that occurred after he completed the naturalization process.

Though we generally lack jurisdiction to review an aggravated felon's final order of removal, we have jurisdiction to review Duran-Pichardo's challenge to the agency's denial of his citizenship claim because there are no factual issues and we retain the authority to determine our own jurisdiction. *See* 8 U.S.C. §1252(a)(2)(C); *see also*, *Brandao v. Att'y Gen. of the U.S.*, 654 F.3d 427, 428 (3d Cir. 2011) ("[W]e do have jurisdiction to determine our jurisdiction, particularly in cases such as this where the petitioner claims to be a national of the United States, and no material issues of fact are presented."). Section 1252(a)(2)(D) also provides that we retain jurisdiction to consider constitutional questions and Duran-Pichardo argues that he has unconstitutionally been deprived of a protected liberty interest without due process of law. Because we address a purely legal question, our review of the agency's rejection of Duran-Pichardo's due process claim is plenary.

To become a naturalized citizen of the United States, Duran-Pichardo was required to: (i) maintain five years' lawful permanent residence, physical presence in the United States for at least half of that time, and continuous residence

from the date of application until admission to citizenship; (ii) submit an application; (iii) pass a background check; (iv) pass a test on United States history and government and establish his proficiency in communicating in English; (v) be examined under oath by an immigration official; and (vi) publicly swear allegiance to the United States and renounce allegiance to other sovereigns before the Attorney General or a competent court. *See* 8 U.S.C. §§1423(a); 1427(a); 1445(a); 1446(a) & (b); 1448(a).

It is undisputed that Duran-Pichardo did everything that was required for naturalization except take the Oath. He claims that that omission should not defeat his claim to citizenship because he was verbally informed that his application for naturalization had been approved and the date for the Oath ceremony was forthcoming. Duran-Pichardo, however, concedes that he never actually took the Oath as prescribed by statute.

Because Duran-Pichardo never took the Oath, he never became a citizen and he remained subject to removal. Congress requires that an alien publicly take the Oath before the Attorney General (or his/her designee) as a condition of naturalization. The statutory language is clear and unambiguous. Therefore, Duran-Pichardo was still subject to removal even though he completed all of the other prerequisites to citizenship. *See e.g.*, *Okafor v. Attorney General,* 456 F.3d 531, 534 (5th Cir. 2006) (alien who signed document containing oath of renunciation and allegiance required of all applicants for naturalization, but who did not take oath in public ceremony, had not met requirements for becoming naturalized citizen); *Tovar-Alvarez v. Attorney General*, 427 F.3d 1350, 1353 (11th Cir. 2005) (same).

Duran-Pichardo claims, nevertheless, that his satisfactory completion of all of the other requirements for naturalization created a liberty interest in citizenship that cannot be undermined by something that was the result of the Government's own delay in administering the Oath.[7] The

---

[7] Though Duran-Pichardo's argument is analogous to an equitable estoppel claim, he contends that he is not making an

7

Government asserts that Duran-Pichardo could not acquire any cognizable liberty interest until he had satisfied *all* of the conditions for becoming a citizen, including taking the statutorily-mandated oath.

The relevant naturalization regulation, 8 C.F.R. 335.3(a) provides:

> USCIS[8] shall grant the [naturalization] application if the applicant has complied with

---

estoppel argument. *But see* Appellant's Brief, pp. 17-18 ("Had the INS fulfilled its statutory duties in 1998, Mr. Duran would have been a citizen for nearly ten years at the time of his arrest, and the secondary (and much worse) punishment of deportation would not have been an option. . . . [T]his Court should now order the USCIS to fulfill that requirement, and grant Mr. Duran his citizenship."). Nevertheless, his claim is so similar to an assertion of estoppel that prudence requires that we treat that claim as though it rested on an alleged estoppel.

Despite the Government's purported negligence in finalizing Duran-Pichardo's petition for citizenship, these circumstances do not give rise to an estoppel. To establish equitable estoppel here, Duran-Pichardo must show: (i) a misrepresentation; (ii) upon which he reasonably relied; (iii) to his detriment; and (iv) affirmative misconduct. *See Mudric v. Att'y General of the U.S.*, 469 F.3d 94, 99 (3d Cir. 2006). We have previously held that delay in processing a naturalization application does not give rise to an estoppel claim. *See id.* ("[M]ere delay does not constitute 'affirmative misconduct' on the part of the Government.").

[8] The Attorney General has delegated his statutory authority to naturalize immigrants to the United States Customs and Immigration Service ("USCIS"). *See* 8 U.S.C. §1421; *see also*, 8 C.F.R. §310.1. On March 1, 2003, Congress transferred the functions of the Immigration and Naturalization Service to the Bureau of Immigration and Customs Enforcement ("ICE") and USCIS of the United States Department of Homeland Security ("DHS"). *Zheng v. Gonzales*, 422 F.3d 98, 103 n. 2 (3d Cir. 2005).

all requirements for naturalization under this chapter. A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under §335.2. The applicant shall be notified that the application has been granted or denied and, if the application has been granted, of the procedures to be followed for the administration of the oath of allegiance pursuant to part 337 of this chapter.

*Id*.; *see also* 8 U.S.C. §1446(d) ("The employee designated to conduct any such examination shall make a determination as to whether the application should be *granted or denied*, with reasons therefor.") (emphasis added). If an applicant for naturalization is not notified of a decision within 120 days of his/her examination under oath, s/he can apply to the appropriate United States District Court for a hearing on the naturalization application pursuant to 8 U.S.C. §1447(b).[9]

Thus, USCIS was only required to act on his naturalization application within 120 days from the date of his examination under oath, it was clearly not required to grant the application before Duran-Pichardo satisfied the statutory prerequisites to citizenship – nor could it have done so without violating the very statute that establishes the procedure for becoming a naturalized citizen. Moreover, it is clear that the USCIS retained the discretion to deny Duran-Pichardo's application for naturalization until he took the Oath that is mandated by Congress. Thus, Duran-

---

[9] 8 U.S.C. § 1447(b) provides:

If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.

Pichardo could not have obtained any recognizable interest in the grant of his naturalization application without taking that Oath.

Though the parties focus much of their arguments on whether Duran-Pichardo's application was actually granted or should have been granted, that is not the question before us. We need only determine if Duran-Pichardo remained subject to removal until he took the Oath. Since Congress requires that an alien publicly take the Oath before the Attorney General (or his/her designee) as a condition of naturalization, that question is not difficult to answer. The statutory language is clear and unambiguous. Duran-Pichardo was still subject to removal even though he completed all of the other prerequisites to citizenship. *See e.g.*, *Okafor v. Attorney General,* 456 F.3d 531, 534 (5th Cir. 2006) (alien who signed document containing oath of renunciation and allegiance required of all applicants for naturalization, but who did not take oath in public ceremony, had not met requirements for becoming naturalized citizen); *Tovar-Alvarez v. Attorney General*, 427 F.3d 1350, 1353 (11th Cir. 2005) (same); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) ("A constitutional entitlement cannot be created-as if by estoppel-merely because a wholly and *expressly* discretionary [government] privilege has been granted generously in the past." (internal quotations and citations omitted) (emphasis in original)); *Mudric v. Att'y Gen. of the U.S.*, 469 F.3d 94, 99 (3d Cir. 2006) ("[T]he various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible. . . . [The alien] simply had no due process entitlement to the wholly discretionary benefits of which he . . . [was] allegedly deprived, much less a constitutional right to have them doled out as quickly as he desired.").

The facts, however, remain that the Government failed to act on Duran-Pichardo's application within 120 days of his naturalization examination, and Duran-Pichardo failed to apply to the District Court for a hearing on the matter. Having failed to invoke the very statutory and regulatory scheme that Congress enacted to address this type

of delay, Duran-Pichardo can not now assert that he was deprived due process of law.

Now, Duran-Pichardo has no remedy because he has committed an aggravated felony and removal proceedings have been initiated against him. *See* 8. U.S.C. § 1429 ("[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act . . ..").

"Removal proceedings quite simply have priority over naturalization applications. . . . [I]t would be 'odd if the Attorney General and district courts were barred from considering naturalization applications while removal proceedings are pending, yet the BIA and IJs—who have no jurisdiction over such applications in any case—were not.'" *Zegrean v. Att'y Gen. of U.S*, 602 F.3d 273, 274-5 (3d Cir. 2010) (quoting *Perriello v. Napolitano*, 579 F.3d 135, 142 (2d Cir. 2009)); *But cf. Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 259-61 (2012) (preserving the availability of limited judicial review of naturalization decisions during removal proceedings in circumstances not presented by this case).

Duran-Pichardo argues that he is entitled to *nunc pro tunc* review of his naturalization application. "*Nunc pro tunc*" consideration "permits acts to be done after the time they should have been done with a retroactive effect." *Barden v. Keohane*, 921 F.2d 476, 478 n.2 (3d Cir. 1990). Essentially, Duran-Pichardo wants us to order the agency to review his application as if he was not an aggravated felon and, thus, still eligible for citizenship.

However, we clearly lack the authority to provide *nunc pro tunc* relief here. Equitable relief is unavailable if it would require agency review of an alien's naturalization application while that alien is the subject of an outstanding finding of deportability or a pending removal proceeding.

*See* 8 U.S.C. §1429; *see also*, *Cheruku v. Att'y Gen. of U.S.,* 662 F.3d 198, 209 (3d Cir. 2011) ("[A] court may not award equitable relief in contravention of the expressed intent of Congress.") (internal citations omitted); *Ajlani v. Chertoff,* 545 F.3d 229, 240-1 (2d Cir. 2008) ("[A]n alien cannot secure naturalization from either the district court or the Attorney General while removal proceedings are pending….").

We realize that it may appear that we are turning the proverbial "blind eye" toward the Government's lapse in handling Duran-Pichardo's application for naturalization. However, it must be remembered that, but for his status as an aggravated felon, and the criminal convictions that gave rise to that status, he would still be eligible for naturalization. We can undo neither his crimes nor his convictions and therefore, as we have already explained, Duran-Pichardo is removable and ineligible for the relief he is requesting.

For the reasons set forth above, the petition for review will be denied.