**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3404
_____

MAXIMO REYES,
                                   Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES;
DEPARTMENT OF HOMELAND SECURITY (DHS),
                                   Respondents

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A035-583-456)
Immigration Judge:  Honorable Andrew R. Arthur

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 1, 2013
Before:  SMITH, CHAGARES and WEIS, <u>Circuit Judges</u>

(Opinion filed: February 15, 2013)
_____

OPINION
_____

PER CURIAM.

Maximo Reyes petitions for review of an order from the Board of Immigration

Appeals ("BIA") denying his motion for reconsideration.  For the following reasons, we

will deny the petition for review.

1

Reyes, a native and citizen of the Dominican Republic, was admitted to the United States as a lawful permanent resident in 1978. He returned to the Dominican Republic in 1990, where he remained until he was extradited to the United States in 1997 to stand trial on federal charges related to his role as the head of an organization that sold large quantities of cocaine. Reyes pleaded guilty to participating in a racketeering enterprise, in violation of 18 U.S.C. § 1962(c), and conspiracy to commit murder, in violation of 18 U.S.C. § 1959(a)(5), and he is currently serving a sentence of 360 months in prison.

Immigration proceedings began in 2009 based on the convictions, and Reyes was charged as inadmissible for committing a crime involving moral turpitude and for having been convicted of multiple criminal offenses with an aggregate sentence of more than five years. Reyes challenged removal by claiming that he is a national of the United States. The Immigration Judge ("IJ") found that Reyes was born in the Dominican Republic and is a citizen of that country, and that his failure to take the oath of allegiance after applying for U.S. citizenship prevented him from being a national of the United States.

Reyes also sought asylum and deferral of removal pursuant to the Convention Against Torture ("CAT"). He testified that he had been detained for twenty-one days and beaten in the Dominican Republic because he was suspected to be involved in the drug trade due to the simple fact that a drug trafficker named Rolando Florian bought a car from him. He was released after paying a bribe, but when he sought the return of his confiscated property, it had already been sold. Reyes claimed that the government of the

2

Dominican Republic took him into custody and extradited him to the United States in order to cover up its malfeasance regarding his property. He also suggested that there was a political motivation behind the extradition, claiming that a government official reported that Reyes had transferred drug money to the opposition party. Reyes feared that he would be killed if he returned to the Dominican Republic because he has spoken out about the illegal seizure of his property. Reyes relied on the fact that Rolando Florian was killed by a guard while serving a prison sentence.

The IJ had "significant concerns" about Reyes' credibility and found his claim for CAT relief inherently implausible. Administrative Record ("A.R.") at 54, 58. In particular, the IJ noted that even if corruption in the Dominican Republic led to Reyes' extradition, "it strain[ed] credulity" to believe that he would plead guilty in the United States to crimes carrying a significant penalty if he were not in fact guilty. A.R. at 52-53. In the alternative, the IJ concluded that Reyes had not demonstrated that he is eligible for CAT relief even if one were to assume that his testimony was credible. First, the IJ concluded that Florian's death in prison did not show that any harm would come to Reyes, relying on evidence that Florian was given many unusual liberties in prison, that he was killed after a fight broke out at a party he hosted in prison, and that the incident had been investigated. Moreover, the IJ concluded that even if Reyes were subject to harm in the Dominican Republic in retribution for speaking out about the illegal disposal of his property, such harm would be isolated acts by rogue agents in contravention of the country's laws. Accordingly, the IJ denied relief under the CAT. The IJ also found

3

Reyes ineligible for asylum because his convictions were for aggravated felonies. Reyes was ordered removed as charged to the Dominican Republic.

The BIA affirmed without issuing an opinion, and Reyes did not seek judicial review of that decision. Later, he filed a timely motion for reconsideration, claiming that (1) there are factual errors in the IJ's decision, (2) he is a national of the United States, (3) he cannot be removed until a federal court fully reviews his habeas petition challenging his conviction, and (4) he is eligible for CAT relief. The BIA denied the motion, finding any alleged factual errors to be either ministerial or nonexistent and the remaining claims to lack merit. This petition for review followed. We have jurisdiction pursuant to 8 U.S.C. § 1252 and review the BIA's denial of a motion for reconsideration for an abuse of discretion. See Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011).

Reyes contends that he is a national of the United States and therefore not subject to removal. He bases this contention on two assertions: (1) that he is not a citizen of the Dominican Republic because that country "deported" him to the United States and only aliens are deported, and (2) that he is a national of the United States because he completed all steps for becoming a naturalized citizen except taking the public oath of allegiance. Regarding the first assertion, Reyes points to nothing in the record to support his claim that he was deported to the United States, whereas the record is replete with references to his extradition. A.R. at 122, 222, 266, 304. Reyes also admitted that he is a citizen of the Dominican Republic. A.R. at 123. Furthermore, Reyes is not a national of the United States. A national of the United States is either (1) a citizen, or (2) a non-

4

citizen who owes permanent allegiance to the United States. See 8 U.S.C. § 1101(a)(22). In general, the latter category refers to a person who was born having certain connections to an outlying possession of the United States. See 8 U.S.C. § 1408. Reyes has not established that he qualifies as a non-citizen national under § 1408, so he must show that he is a citizen. He asserts that he fulfilled all steps to become a naturalized citizen except taking the oath of allegiance. But as we recently held, the public oath of allegiance is a condition of naturalization, and the failure to take it means that a person is not a citizen and subject to removal despite fulfillment of the other requirements for naturalization. Duran-Pichardo v. Att'y Gen., 695 F.3d 282, 285 (3d Cir. 2012). Accordingly, Reyes has failed to show that he is a national of the United States.

Reyes next argues that the BIA should have granted reconsideration and remanded his case because he is challenging his criminal conviction in a federal habeas corpus petition under 28 U.S.C. § 2241. There is no merit to this argument. A conviction attains finality for immigration purposes when direct appellate review has been exhausted or waived. See Paredes v. Att'y Gen., 528 F.3d 196, 198 (3d Cir. 2008). A petition for a writ of habeas corpus is a collateral attack on a conviction, which does not negate finality. Id. at 198-99. Finality would be negated in this case only if Reyes' conviction was overturned as a result of the habeas petition, id. at 199, which he has not alleged has occurred. Reyes mistakenly believes that Drakes v. INS, 330 F.3d 600 (3d Cir. 2003), provides a basis for vacating his final order of removal pending a decision on his habeas petition. He relies on an exception noted in that opinion which allows an alien to attack

5

an underlying conviction in an immigration proceeding if no other channel of review was available. Id. at 605-06. But the Drakes exception does not affect the finality of a conviction for immigration purposes. Instead, it merely allows a challenge to the conviction in immigration proceedings in certain rare circumstances not present here. Because Reyes' claim hinges on the issue of finality, Drakes affords him no relief.

Reyes' next two claims were not raised in his motion for reconsideration: (1) that the immigration court lacked jurisdiction because a removal charge was not included in the terms under which he was extradited, and (2) that the BIA erred by failing to review the IJ's decision regarding his CAT claim under the standard enunciated in Kaplun v. Attorney General, 602 F.3d 260 (3d Cir. 2010). Therefore, Reyes has not exhausted these issues and we lack jurisdiction to consider them.[1] Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).

Even if we had jurisdiction, we would conclude that the claims lack merit. Reyes argues that he may only be tried and/or punished in the United States for the offenses for which he was extradited, see United States v. Rauscher, 119 U.S. 407, 420 (1886), and that removal is inconsistent with the terms of the extradition treaty. Reyes was extradited pursuant to the Extradition Treaty between the United States and the Dominican Republic of June 19, 1909. See Reyes-Vasquez v. Att'y Gen., 304 F. App'x 33, 34 (3d Cir. 2008).

---

[1] Although Reyes raised the issue regarding extradition terms on appeal to the BIA, he did not raise it in his motion for reconsideration, the denial of which is the only decision subject to review in this case. See Castro v. Att'y Gen., 617 F.3d 356, 364 (3d Cir. 2012) (noting that a BIA denial on the merits and the denial of a later motion are separate orders subject to separate petitions for review).

Article IV of that treaty states that "[n]o persons shall be tried for any crime or offence other than that for which he [sic] was surrendered." It is clear that this language refers only to criminal prosecution. Immigration proceedings are not a criminal prosecution, see, e.g., Carlson v. Landon, 342 U.S. 524, 537 (1952), and therefore are not barred by the treaty. As for Reyes' contention that the BIA erred by failing to apply the Kaplun standard to its review of the IJ's decision, he is simply incorrect because there was no need for the BIA to do so. Kaplun concerns the standard of review the BIA must apply when reviewing the legal and factual components of a CAT claim. 602 F.3d at 269-72. In this case, the BIA adopted the IJ's decision as its own and did not issue a separate opinion. This disposition made an express Kaplun analysis – or any other analysis – unnecessary and unwarranted. See 8 C.F.R. § 1003.1(e)(4)(ii) ("An order affirming without opinion . . . shall not include further explanation or reasoning.")

Reyes' remaining claims also lack merit. He has not established that he is entitled to CAT relief. He has done nothing more than reiterate evidence the IJ already considered. Furthermore, his argument regarding the perpetrators of any supposed future harm goes only to the IJ's alternative holding, which was premised on assuming the plausibility of his testimony. A.R. at 54. Reyes has not challenged the IJ's initial determination that his CAT claim "as a whole . . . is not inherently plausible." Id.

For these reasons, we will deny the petition for review.

7