NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3126
_____

PAUL WILLIAMS,
                              Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge: Kuyomars Q. Golparvar
(No. A047-366-837)

_____

Argued November 17, 2020

Before: AMBRO, BIBAS and ROTH, Circuit Judges

(Opinion filed: March 3, 2021)

Sandra L. Greene, Esq. (Argued)
Greene Fitzgerald Advocates and Consultants
2575 Eastern Boulevard
Suite 208
York, PA   17402

            Counsel for Petitioner

William P. Barr, Esq.
Joann L. Watson, Esq. (Argued)
Office of Immigration Litigation

United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

_____

OPINION[*]
_____

AMBRO, Circuit Judge,

Petitioner Paul Williams seeks our review of a final order of removal by the Board of Immigration Appeals ("BIA"). For the reasons stated below, we deny his petition for review.

## I.

Williams was born in Trinidad and came to the United States in 2000, when he was seventeen years old. In 2002, Williams attended college in upstate New York and began selling drugs there. He ultimately dropped out of college and began selling drugs for a living. Williams intermittently sold drugs between other jobs for the next decade. He testified he fears for his life in part because he failed to repay several of his U.S.-based suppliers who gave him drugs on credit during this time. Williams further testified that his life would be in even more danger in Trinidad because the suppliers had gang-related ties

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

with two individuals who were previously deported there from the United States and had already threatened him and his family several times.

Williams was arrested on drug charges in 2013 and in 2016 he pled guilty to conspiracy to possess with intent to distribute cocaine and heroin under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. He was sentenced to sixty months' imprisonment, the mandatory minimum for his offenses. In 2018, the Government filed a Notice to Appear charging Williams as removable for committing three kinds of crimes: (1) illicit trafficking in a controlled substance (under INA §§ 237(a)(2)(A)(iii) and 101(a)(43)(B)); (2) attempt or conspiracy to commit an illicit substance trafficking offense (under INA §§ 237(a)(2)(A)(iii) and 101(a)(43)(U)); and (3) offenses relating to controlled substances except minor marijuana possession (under INA § 237(a)(2)(B)(i)).

On July 26, 2018, Williams appeared at his first hearing without an attorney, and he requested a continuance so he could obtain one. The IJ granted his request and reset the case for August 23. On that date, Williams again appeared without counsel. He told the IJ that he had retained counsel and requested a second continuance to "get all of this straightened out." A.R. 85, 87. This time, however, the IJ denied Williams's request and proceeded to the evidentiary part of the hearing. In a particularly concerning moment, the IJ told Williams that he should remain silent—and when Williams questioned the IJ, the IJ responded that "[y]ou can [say something], but if you have an attorney, you might not want to. I really don't care. I just have to move my cases." A.R. 89. But the IJ later explained:

> I don't know what's going on with your attorney, but I do know
> that I need to move along with your case for your due process
> rights and, by you remaining silent, I'm simply trying to
> protect your rights. And you as a grown adult can waive that

3

right and you can say stuff to me if you want to, but I don't—obviously I want you to feel comfortable in whatever you do.

A.R. 90. The IJ also told Williams that if his attorney "believes that the Court has made any errors in any of its findings today, [the attorney] can file a motion to reopen or reconsider." A.R. 88.

The IJ proceeded to review the Government's evidence and sustained the charges of removability as to (1) attempt or conspiracy to commit an illicit substance trafficking offense and (2) an offense relating to controlled substances. However, the IJ did not give Williams the opportunity to enter pleadings as to the Government's allegations. The IJ initially told Williams to "tell your attorney that we did pleadings today, but you remained silent." A.R. 89. But at the close of the hearing, the IJ told Williams to remind his attorney that "we did not take pleadings. I didn't ask you any questions about your case. I relie[d] on the Government['s] evidence, okay? . . . And if he has or she has any questions or comments, they can send it to me in writing, fair enough?" A.R. 96.

After the IJ sustained the Government's charges of removability, Williams had at least two hearings concerning his application for relief from removal. Counsel was present at both hearings. First, on September 27 the IJ held a hearing because Williams's application for withholding relief was due that day. But the IJ granted Williams a continuance, noting that his attorney had just started his representation a few days before the hearing. Second, on October 25, the IJ held a hearing on Williams's application for relief under the Convention Against Torture ("CAT"). At that hearing, his counsel conceded that Williams was only eligible for CAT relief and could not pursue other forms

4

of relief from removal.  The IJ also noted that Government pleadings had already been taken in the case, and Williams's counsel did not object.

The IJ ultimately denied Williams's CAT claim.  The IJ found that his testimony was credible but concluded that the CAT claim failed because Williams could not demonstrate that (1) he would be tortured upon his return to Trinidad or (2) the Trinidadian government would acquiesce in or be willfully blind to that torture.

The BIA adopted and affirmed the IJ's decision.  It first concluded that the IJ did not err by denying Williams's request for a continuance at the August 23 hearing.  It observed that the IJ had already granted a continuance for Williams to obtain legal counsel and that he later received several additional continuances in the process after he obtained representation.  The BIA also affirmed the IJ's denial of CAT relief, agreeing with the IJ that Williams had not met his burden of showing that he would be tortured or that the Trinidadian government would acquiesce to his torture.  The BIA thus affirmed the IJ's decision and dismissed Williams's appeal.

## II.

Williams now challenges three aspects of his removal proceedings: the IJ's failure to take pleadings before sustaining Williams's charges of removal; the IJ's denial of his second motion for continuance in August 2018; and the BIA's factual findings that support the denial of his CAT claim.

We generally have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1).  However, our jurisdiction is more limited when, as here, the BIA ordered the petitioner's removal on the ground that he committed certain offenses.  8 U.S.C.

5

§ 1252(a)(2)(C); *see also Duran-Pichado v. Att'y Gen.*, 695 F.3d 282, 285 (3d Cir. 2012). In that case, our jurisdiction is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). But we are free to review both legal and factual issues relating to Williams's CAT claim. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1694 (2020) (holding that the jurisdiction-stripping provisions relating to removal for criminal offenses do not affect judicial review of a CAT claim). We review the BIA's legal conclusions *de novo*, *Malik v. Att'y Gen.*, 659 F.3d 253, 256 (3d Cir. 2011), and we review its factual findings for substantial evidence, *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011).

## A. Failure to Take Pleadings

Williams first argues that the Government violated applicable regulations and his Fifth Amendment due process rights when the IJ failed to take pleadings in the case. Federal regulations govern removal hearings and provide, among other things, that "[t]he immigration judge shall require the respondent to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein." 8 C.F.R. § 1240.10(c). The Government does not contend that the IJ complied with this regulation. Rather, it argues that Williams was not harmed by this noncompliance because, under the totality of the circumstances, the IJ's actions fully protected Williams's rights.

We agree. The pleadings regulation only permits an alien to admit or deny the Government's factual allegations. 8 C.F.R. § 1240.10(c). Here, the IJ proceeded with the evidentiary phase of the proceedings as if Williams denied all of the Government's allegations. This was consistent with the IJ's concern that Williams should be careful about

6

speaking without an attorney present.  Moreover, the IJ expressly invited Williams's counsel to file a motion to reconsider if he objected to any aspect of the proceedings, but the counsel did not file any such motion despite attending later hearings.  Ordinarily we look to our decision in *Leslie v. Attorney General*, 611 F.3d 171, 178 (3d Cir. 2010), to determine whether a regulatory violation is reversible error without a showing of prejudice.  But the unique facts of this case do not compel reversal under *Leslie* because Williams's rights were fully protected—and perhaps better protected—by the IJ's actions here.  Thus, his failure to take pleadings is not reversible error.

**B.  Denial of Continuance**

Second, Williams argues that the IJ violated his Fifth Amendment due process rights by denying him a second continuance to obtain counsel.  As a threshold matter, the Government asserts that we do not have jurisdiction to consider this question.  We have squarely held that the jurisdiction-stripping provisions at issue here divest us of jurisdiction to review an IJ's denial of a continuance because the decision to grant or deny a continuance is discretionary.  *Rachak v. Att'y Gen.*, 734 F.3d 214, 216–17 (3d Cir. 2013); *see also* 8 C.F.R. § 1003.29 (providing that an IJ may grant a continuance for "good cause shown").  We have recently held that the jurisdictional bar applies unless the petitioner presents a colorable constitutional claim.  *See Mirambeaux v. Att'y Gen.*, 977 F.3d 288, 292 (3d Cir. 2020) (citing, among others, *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007)).

"To determine whether a claim is colorable, we ask whether 'it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and

7

frivolous.'" *Pareja v. Att'y Gen.*, 615 F.3d 180, 186 (3d Cir. 2010) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10) (2006)). Here, Williams presents a colorable constitutional claim. The substance of his claim is not that the IJ denied him a continuance; rather, he asserts the denial of a continuance violated his due process right to a fair hearing by depriving him of counsel. This is a substantive constitutional complaint that does not seem to be fabricated solely for jurisdictional reasons. *Cf. Mirambeaux*, 977 F.3d at 292–93. We therefore have jurisdiction to consider Williams's claim on the merits.[1]

We have often opined on the importance of an alien's right to obtain counsel in removal proceedings. *See, e.g.*, *Leslie*, 611 F.3d at 181 ("The complexity of removal proceedings renders the alien's right to counsel particularly vital to his ability to reasonably present his case." (alterations and internal quotation marks omitted)). We have also expressly held that an IJ abuses its discretion by denying a continuance based solely on the obligation or desire to complete cases quickly. *Hashmi v. Att'y Gen.*, 531 F.3d 256, 261 (3d Cir. 2008). However, assuming without deciding that the IJ abused his discretion here, a due process violation in this context is only reversible error if the petitioner can also demonstrate substantial prejudice. *Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 787 (3d Cir. 2010). That showing requires the petitioner to demonstrate that the complained-of error has "the potential for affecting the outcome of [the] deportation proceedings." *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017) (emphasis and internal quotation marks omitted).

---

[1] Judge Bibas does not find this to be a colorable constitutional claim and would not reach the merits.

Here, Williams was not substantially prejudiced as a result of the denial of a continuance because he cannot show that the denial had the potential for affecting the outcome of his proceeding. He does not meaningfully dispute that he pled guilty to a serious drug charge that rendered him removable. And Williams's counsel implicitly conceded that Williams had been convicted of a serious drug charge by affirming that he was not eligible for asylum or withholding of removal. Thus, Williams's lack of counsel at one of his hearings did not potentially affect the outcome of his case, and the IJ did not commit reversible error in denying the request for a continuance.

## C. CAT

Finally, Williams cursorily argues that the BIA erred in denying him CAT relief. To succeed on a CAT claim, an applicant must show that (1) it is more likely than not that the applicant will be tortured if removed and (2) public officials will acquiesce in that torture. *See Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019). We review factual findings under the "highly deferential" substantial-evidence standard. *Nasrallah*, 140 S. Ct. at 1692. Under this standard, the BIA's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

To refresh, the BIA in this case concluded that Williams was not entitled to CAT relief both because he had not shown that he would more likely than not be tortured and because he had not shown that the Trinidadian government would acquiesce in his mistreatment. On appeal, Williams fails to challenge meaningfully the BIA's conclusion

9

that his mistreatment would not amount to torture.[2] Rather, he only contests the BIA's conclusion that the Trinidadian government would not acquiesce to his mistreatment. Because the BIA's finding as to torture is dispositive, we affirm the denial of CAT relief on this ground. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n.1 (3d Cir. 2005) (noting that arguments not raised on appeal in an immigration proceeding are forfeited).

Further, even if we could reach the BIA's acquiescence finding on the merits, that finding is supported by substantial evidence. Williams primarily argues that even if the Trinidadian government does not expressly consent to his torture, it still cannot protect him from his feared harm. *See Quinteros*, 945 F.3d at 788 (noting that "a government can acquiesce in torture despite opposing the group inflicting harm"). In support, Williams testified that he had witnessed a scene in Trinidad where one of his childhood friends, who was wanted by the police, was "hanging out and laughing about his criminal conduct" with another childhood friend, who was a police officer. Further, Williams's expert testified that the two prominent gangs in Trinidad had infiltrated the police force there. The expert also testified that he believed the Trinidadian government would not protect Williams from violence because he would be a criminal deportee. However, the expert acknowledged that the gangs Williams feared from his days in the drug industry (the Bloods and the Crips) did not have an established presence in Trinidad.

---

[2] Williams devotes only one sentence to challenging this finding, arguing only that the BIA's review of the IJ's finding was "conclusory and was not supported by reference to the record or [Williams's] credible testimony." Williams's Br. at 31. But the BIA's opinion expressly adopts and incorporates the IJ's decision, and the IJ's decision thoroughly discusses Williams's testimony and other record evidence on this issue.

10

In denying Williams's CAT claim, the IJ observed that the Trinidadian government has taken significant high-level steps to combat gang violence. The IJ also recounted specific episodes in which Williams was threatened both in the United States and in Trinidad and noted that the police in Trinidad handled the threats in a similar manner to the police in the United States. Finally, the IJ observed that the individuals Williams feared in Trinidad were not associated with any of the gangs that the expert testified had infiltrated the Trinidadian government.

In short, the record does not compel the conclusion that the government in Trinidad is unwilling or unable to protect Williams from violence. Because of these deficiencies and his failure to challenge meaningfully the BIA's torture finding, Williams's CAT claim fails.

\* \* \* \* \*

For these reasons, we deny Williams's petition for review.

11