PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2051
_____

GARY LALL,
                    Appellant

v.

DEPARTMENT OF HOMELAND SECURITY, U.S.
CITIZENSHIP
& IMMIGRATION SERVICES
_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 3-19-cv-00048)
District Judge:  Honorable Kim R. Gibson
_____

No. 20-2477
_____

GARY LALL,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA


On Petition for Review of an Order of the
Board of Immigration Appeals
(1A029-802-117)
Immigration Judge:  Honorable Alice Hartye


Argued
March 5, 2024

Before:   JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed August 27, 2024)
_____

Robert E. Day, III   [ARGUED]
Montgomery McCracken Walker & Rhoads
1735 Market Street – 21st Floor
Philadelphia, PA  19103
        *Counsel for Appellant/Petitioner*

Christopher B. Buchanan   [ARGUED]
Nancy Canter
Rodolfo D. Saenz
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044

Laura S. Irwin
Office of United States Attorney
700 Grant Street – Suite 4000
Pittsburgh, PA  15219
    *Counsel for Appellee/Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

In 1990, seventeen-year-old Gary Lall, who had been born overseas, applied through his adoptive parents for a Certificate of Citizenship to confirm that he was a U.S. citizen. After he turned eighteen, the government approved the application, and Lall received a certificate stating he "became a citizen." (D.I. 1-2 at 1.)  As it turned out, however, the government had erroneously issued the certificate because Lall had not satisfied all the statutory requirements to obtain citizenship.  Government employees realized the error not long after the certificate was issued, yet the government waited twenty-one years to administratively cancel it.  Lall, who was incarcerated when the cancellation occurred, filed a declaratory judgment action in the Western District of Pennsylvania under 8 U.S.C. § 1503, seeking a declaration of citizenship.  Shortly thereafter, the government initiated removal proceedings against him, and an Immigration Judge (the "IJ") ordered his removal.  He fared no better in his declaratory judgment action, which the District Court dismissed.

3

While we can readily appreciate how bitter this result is for Lall, neither the District Court nor the Immigration Judge erred.  Because Lall never obtained citizenship, he was subject to removal.  And, for the reasons set forth below, our equitable powers do not permit us to grant citizenship.  We will therefore affirm the District Court's dismissal of Lall's declaratory judgment pleading and deny his petition for review of the Immigration Judge's order of removal.

## I.    BACKGROUND

In 1988, at the age of fifteen, Lall came to the United States from his native Trinidad and Tobago on a non-immigrant visitor visa.  He was legally adopted by Harrack and Tara Lall, who were originally citizens of Trinidad and Tobago and had become naturalized U.S. citizens in 1975 and 1979, respectively.

In November 1990, after living with his adoptive parents for two years, Lall became a lawful permanent resident of the United States at the age of seventeen years and nine months.  The following month, he applied for a Certificate of Citizenship, claiming derivative citizenship through his adoptive parents.  He used a form provided by an Immigration and Naturalization Services ("INS") clerk.  [All of the information provided on his application was accurate, including Lall's adoptive parents' dates of naturalization.

In July 1991, after Lall turned eighteen, he was interviewed by an INS examiner, and his application was approved.  He swore the Oath of Allegiance before the INS examiner the same day.  In addition, the INS examiner filled out a Report and Recommendation stating that Lall "derive[d]

or acquire[d] United States citizenship on [April 5, 1991] through [his] Parents." (D.I. 1-7 at 1.) Critically, however, the INS examiner incorrectly recorded that Lall's adoptive parents were also naturalized on April 5, 1991, even though Lall's application reflected the accurate dates in 1975 and 1979. The Report and Recommendation was approved and signed by the then-INS District Director or Officer in Charge. The INS issued Lall a Certificate of Citizenship the following week. That Certificate stated that he "became a citizen" on April 5, 1991. (D.I. 1-2 at 1.)

A few months later, in August 1991, the INS sent the State Department a memo raising questions about Lall's citizenship. The memo stated that Lall was "not entitled to the certificate of citizenship issued to him" because he "was over the age of 18 at the time of the interview." (D.I. 1-12 at 1.) It also said that "[a]ppropriate action is being taken at this time to revoke his citizenship." (D.I. 1-12 at 1.)

The mills of government at times grind very, very slowly – appallingly so in this instance. Twenty-one years passed, and, in December 2012, while Lall was serving a sentence for a drug conviction,[1] U.S. Citizenship and Immigration Services ("USCIS" or the "agency") finally notified him that it intended to administratively cancel his Certificate of Citizenship. The USCIS construed Lall's 1990 application as one for derivative citizenship under the former

---

[1] In 2006, Lall was convicted of conspiracy to import five kilograms or more of cocaine and conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, and was sentenced to 210 months' imprisonment.

5

§ 321 of the Immigration and Nationality Act (the "INA"), as the application was made on the form designed specifically for that purpose. But the agency explained that because Lall did not enter or reside in the United States at the time that his adoptive parents naturalized in the 1970s, he had not been eligible for derivative citizenship under that provision. Thus, the USCIS determined that Lall had never acquired citizenship, and it intended to cancel his certificate pursuant to its authority under § 342 of the INA (8 U.S.C. § 1453).

Pursuant to the agency's process, Lall answered that notice by asserting that the certificate should not be canceled because, even if not eligible for citizenship under § 321, he was eligible under former § 322 of the INA, which provided for naturalization of children born outside of the United States. The agency rejected his claim because § 322 required applicants to take the oath before they turned eighteen, and Lall took it after he reached that age.[2] The USCIS then canceled Lall's Certificate of Citizenship.

Lall appealed that decision to the USCIS Administrative Appeals Office (the "Appeals Office"), pressing his prior arguments and contending further that the government should be equitably estopped from canceling his Certificate of

---

[2] The USCIS also noted that his parents did not file an Application for Certificate of Citizenship on Behalf of an Adopted Child (Form N-643), which could have expedited processing time, potentially enabling him to swear the oath, and therefore naturalize, before turning eighteen, but instead filed the Application for Certificate of Citizenship (Form N-600), which Lall asserts was provided by the INS clerk.

6

Citizenship so long after it had been issued. The Appeals Office considered Lall's eligibility for citizenship under former §§ 320, 321, and 322 of the INA. It determined that § 320 did not apply because neither of Lall's adoptive parents were U.S. citizens at the time of his birth in 1973, which was required under that statute.[3] It also concluded that § 321, the provision under which Lall's application had been granted, did not apply because he was not "residing in the United States, in his adoptive parents' custody, at the time of their naturalization."[4]

---

[3] Section 320 afforded citizenship to children "born outside of the United States, one of whose parents at the time of the child's birth was an alien and the other of whose parents then was and never thereafter ceased to be a citizen of the United States[.]" 8 U.S.C. § 1431(a) (1988). It only applied to an adopted child "if the child [was] residing in the United States at the time of naturalization of such adoptive parent[.]" § 1431(b). That section did not apply to Lall because neither one of his adoptive parents was a citizen when he was born in 1973. Moreover, he did not reside with them in the United States as a permanent resident when they were naturalized.

[4] Section 321, which granted citizenship to some children of alien parents, also only applied to adopted children if they were residing in the United States when their parents were naturalized. 8 U.S.C. § 1432 (repealed 2000). This is the section under which Lall was issued his Certificate of Citizenship because the INS examiner incorrectly recorded Lall's parents' naturalization date as April 5, 1991. However, Lall did not meet the requirements of the section because, as mentioned, his parents were naturalized in the 1970s, and he

7

(D.I. 1-5 at 5.)  And it said that § 322 did not apply because Lall's parents did not file the applicable form on his behalf before he turned eighteen and so, regardless of the reason he did not swear the oath of allegiance until after he had turned eighteen, he was ineligible for citizenship under that section too.[5]  The Appeals Office also concluded that it lacked the authority to decide Lall's equitable estoppel claim.  In August 2015, it affirmed the agency's decision to cancel Lall's Certificate of Citizenship, since he had never become a citizen. Lall then moved for reconsideration, which the Appeals Office denied four years later.

Meanwhile, in March 2019, while his motion for reconsideration was still pending, Lall filed a federal suit

---

did not reside with them as a permanent resident in the United States at that time.

[5] Section 322 allowed parents to apply for their children to become naturalized citizens, provided that they "compli[ed] with all the provisions of this subchapter" before they turned eighteen.  8 U.S.C. § 1433 (1990).  "[C]ompliance with all the provisions of this subchapter" included, by reference, then-INA § 337(a), which required taking the oath of allegiance.  8 U.S.C. § 1448(a) (1988) (stating that "[a] person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath").  Unfortunately for Lall, he did not take the oath until July 1991, after he had already turned eighteen.  Because he did not take the oath prior to turning eighteen, he did not satisfy all of the conditions of § 322, so he did not become a citizen under that provision.

8

seeking a declaratory judgment of U.S. citizenship under 8 U.S.C. § 1503(a). The government filed a motion to dismiss or, in the alternative, for summary judgment. Citing essentially the same reasons as had been given by the Appeals Office, a Magistrate Judge recommended granting the government's motion to dismiss because Lall had never obtained citizenship. The District Court adopted the Magistrate Judge's recommendation, [and Lall has appealed.

As those proceedings were wending their way forward, agents from U.S. Immigration and Customs Enforcement ("ICE") interviewed Lall in April 2020, while he was incarcerated. They determined that he was a removable alien with no proper claim to U.S. citizenship. The next month, Lall was served with an alien arrest warrant, a Notice to Appear for a removal hearing,[6] and a Notice of Custody Determination informing him that he would be detained by the Department of Homeland Security during the removal proceedings.

Lall filed a motion to terminate those proceedings. He argued that the immigration court lacked jurisdiction over him because he was still litigating his citizenship status in federal court and that he could not lose his citizenship status unless and

---

[6] The Notice to Appear alleged that he was neither a citizen nor national of the United States and that he was convicted of drug-related offenses in 2006, so he was subject to removal under §§ 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the INA, which, respectively, authorize removal of noncitizens who have been convicted of an aggravated felony or of a violation of any law or regulation relating to a controlled substance.

9

until his appeals were decided against him. An Immigration Judge denied the motion to terminate, observing that Lall's Certificate of Citizenship was only evidence of citizenship and not itself a citizenship-conferring instrument. The IJ also held that, because Lall was not a naturalized citizen, judicial proceedings to revoke naturalization under 8 U.S.C. § 1451 were unnecessary. Ultimately, the IJ concluded that the USCIS had not erred in holding that Lall never obtained citizenship. Having found in favor of the government, the IJ ordered that Lall be removed to Trinidad and Tobago, and he was deported in January 2021. Lall has filed a petition asking us to review that order of removal.

The petition and his appeal of the District Court's decision against him in his declaratory judgment action are now consolidated before us for decision.

## II. DISCUSSION[7]

### A. Lall Never Obtained U.S. Citizenship.

Both Lall's appeal from the District Court and his petition for review are based on his claim to citizenship. As

---

[7] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 8 U.S.C. § 1252. While petitioners must typically exhaust all administrative remedies available as of right before we may review a final order of removal, 8 U.S.C. § 1252(d)(1), the "exhaustion requirement is not jurisdictional[]" and "is subject to waiver and forfeiture." *Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023). The government has forfeited any exhaustion argument here. As for the appeal from the District Court, we exercise plenary review of the decision on Lall's citizenship claim. *Dessouki v. Att'y Gen.*, 915 F.3d 964, 967 (3d Cir.

we observed nearly seventy years ago in *Delmore v. Brownell*, 236 F.2d 598, 600 (3d Cir. 1956), the plaintiff in an action seeking a declaration of citizenship bears the burden of proving his citizenship by a preponderance of the evidence. In *Delmore*, we held that a government-issued letter confirming plaintiff's status as a U.S. citizen was "a determination of [his] status" and "established his prima facie case." *Id.* And "[o]nce the United States has determined that an individual is a citizen, it should be required to disprove its own determination by 'clear, unequivocal, and convincing evidence[.]'" *Id.*

Lall argues that, in like manner, his Certificate of Citizenship demonstrates his status as a U.S. citizen and serves as prima facie evidence that he is a citizen. Accordingly, he argues, both the District Court and the IJ erred in not holding the government to its burden of refuting his citizenship – errors which he argues amount to violations of his rights to due process and equal protection. Unfortunately for Lall, however, his allegations, even when accepted as true, demonstrate that he was never a U.S. citizen.

---

2019). The District Court granted the government's motion to dismiss for failure to state a claim, and so "we must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). And as for the petition for review, because there is no BIA opinion, we review the IJ's conclusion of law *de novo* and his findings of fact under the substantial evidence standard. *Cf. Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006) (applying the standard to BIA decisions).

11

"The [INA] confers citizenship on children born outside of the United States to alien parents when certain statutory conditions are met." *Morgan v. Att'y Gen.*, 432 F.3d 226, 229 (3d Cir. 2005). We apply the law as it was in 1991, when Lall's application was processed and he was issued his Certificate of Citizenship. *Dessouki v. Att'y Gen.*, 915 F.3d 964, 967 (3d Cir. 2019) ("The law in effect at the time [of] the critical events giving rise to his claim governs our review." (internal quotation marks omitted) (alteration in original)). At that time, there were three potentially relevant pathways for Lall to become a citizen: §§ 320, 321, or 322 of the INA, as it existed then. Lall fails all three. He never satisfied the statutory requirements to derive citizenship under §§ 320 and 321, and he did not become naturalized nor obtain citizenship by application under § 322. Indeed, during oral argument Lall conceded that "it remains the case" that he did not meet the statutory requirements to obtain citizenship (Oral Arg. at 2:45-3:00, https://www2.ca3.uscourts.gov/oralargument/audio/20-2051;20-2477GaryLallv.DepartmentofHomelandSecurity,etal.mp3), and so he loses under a straightforward application of the statutes. That ends the matter. As the relevant statutory conditions were never met, citizenship was never conferred. *Morgan*, 432 F.3d at 229.

The fact that Lall was issued a Certificate of Citizenship does not change that fact. A certificate does not confer citizenship.[8] Although it is prima facie evidence that the holder

---

[8] A person who claims to have derived citizenship through the naturalization of a parent … may apply to the Attorney General for a certificate of citizenship. Upon proof to the

12

is a citizen, *see Delmore*, 236 F.2d at 600; *United States v. Moreno*, 727 F.3d 255, 261 (3d Cir. 2013), citizenship is lawfully conferred only when the statutory requirements for citizenship have been met, *Morgan*, 432 F.3d at 229, regardless of whether a certificate is issued. Accordingly, because Lall admits that he never met the statutory requirements, he necessarily concedes that he never became a U.S. citizen. And since the conceded facts overcome the prima facie evidence of his canceled Certificate of Citizenship, there is no due process concern about the government failing to meet a burden of proof.

Lall's equal protections arguments fail for the same reasons. He compares his case to those subject to

---

> satisfaction of the Attorney General that the applicant is a citizen, and that the applicant's alleged citizenship was derived as claimed … and upon taking and subscribing before a member of the Service within the United States an oath of allegiance … such individual shall be furnished by the Attorney General with a certificate of citizenship[.]

8 U.S.C. § 1452(a). A certificate may be administratively cancelled because it does not itself confer citizenship. 8 U.S.C. § 1453 ("The Attorney General is authorized to cancel any certificate of citizenship[ or] certificate of naturalization, … if it shall appear to the Attorney General's satisfaction that such document or record was illegally or fraudulently obtained[.]"). Any such cancellation, however, "affect[s] only the document and not the citizenship status of the person in whose name the document was issued." *Id.*

13

denaturalization proceedings, arguing that "persons who are similarly situated should be treated in the same manner." (Opening Br. at 45 (quoting *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000)).)  But because he was never a naturalized citizen, he was not entitled to denaturalization proceedings.  8 U.S.C. § 1451(a) (requiring "proceedings in any district court of the United States … [to] revok[e] and set[] aside the order admitting [a naturalized] person to citizenship").  A denaturalization action affects citizenship status, not just the certificate. *Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017).  Rather, the "cancellation … of any document purporting to show the citizenship status of the person to whom it was issued shall affect only the document and not the citizenship status of the person in whose name the document was issued."   8 U.S.C. § 1453.  Consequently, those subject to denaturalization proceedings are not similarly situated to those, like Lall, who are non-citizens to begin with.

It is nevertheless true, however, that the government's facilitation of the confusion in the first place and then, having detected the resulting problem, its failure to take prompt corrective action are deeply troubling.  The staggering ineptitude in leaving Lall and his parents under the impression (for twenty-one years) that he is a U.S. citizen when in fact the government has known practically from the start that there was a mistake is what we turn to next.

## B.  Equitable Estoppel Cannot Be Used to Confer Citizenship.

Ultimately, Lall relies on equitable estoppel to save his claim to citizenship.  "[T]he doctrine of equitable estoppel can

14

apply to the government in the immigration context[.]" *Mudric v. Att'y Gen.*, 469 F.3d 94, 99 (3d Cir. 2006). To prevail on such a claim, the plaintiff "must establish (1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct." *Id.* Lall argues that because equitable estoppel is available in the immigration context, it applies here and allows us to confer citizenship. But that is a step too far, as it would circumvent the strict statutory requirements for obtaining citizenship.

Citizenship itself is not a remedy like other relief in immigration cases. *See Mustanich v. Mukasey*, 518 F.3d 1084, 1089 (9th Cir. 2008) (noting instances in which estoppel was ordered in the context of immigration "to confer a status other than that of citizen[,]" and recognizing that a conferral of citizenship would "interfere with Congress's exclusive constitutional authority to establish rules for naturalization"). Indeed, in *I.N.S. v. Pangilinan*, the Supreme Court made it clear that courts cannot use their equitable powers to confer citizenship:

> [T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers. Rather, it has been given [to] them as a specific function to be performed in strict compliance with the terms of an authorizing statute which says that "[a] person may be naturalized … in the manner and under the conditions prescribed in this subchapter, *and not otherwise*."

15

486 U.S. 875, 883-84 (1988) (third and fourth alterations in original) (citations omitted) (quoting 8 U.S.C. § 1421(d) (emphasis added by the Supreme Court)). The Court concluded, "Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations."[9] *Id.* at 885. In short, no matter how compelling a plaintiff's case may be, our powers do not extend to conferring citizenship in a manner contrary to the statutory requirements.[10] Because Lall did not satisfy the established statutory requirements, his claim to citizenship must fail.

---

[9] During oral argument, Lall emphasized that *Pangilinan* positively cites to *United States Immigration and Naturalization Service v. Hibi*, 414 U.S. 5 (1973), which he contends supports the availability of equitable estoppel. *Hibi*, however, did not hold that we may confer citizenship using equitable powers. It left that question open and instead held that, assuming equitable estoppel might be available, the government's conduct in that case did not amount to affirmative misconduct. *Id.* at 8 ("While the issue of whether 'affirmative misconduct' on the part of the Government might estop it from denying citizenship was left open in [an earlier Supreme Court case], no conduct of the sort there adverted to was involved here."). Consequently, Lall overstates the import of *Pangilinan*'s favorable reference to *Hibi*, and, more importantly, he points to nothing that would overcome *Pangilinan*'s clear directive foreclosing estoppel.

[10] For the same reason, we cannot backdate Lall's application and make it one for naturalization rather than derivative citizenship. "[A] court may not award equitable relief in contravention of the expressed intent of Congress."

16

### III.  CONCLUSION

It is unfortunate that the government erroneously issued Lall a Certificate of Citizenship in the first place.  And it is inexcusable that it quickly discovered its error but failed to correct it for over twenty-one years.  Of course, it is Lall's own subsequent criminal conduct that has brought the consequences of the government's dereliction down on his head.  Still, that dereliction has fundamentally changed Lall's identity and place in the world.  He turns to us for assistance, but we cannot provide the relief he seeks.  Not every wrong is ours to right.

For the foregoing reasons, we will affirm the District Court's dismissal of Lall's declaratory judgment suit and deny his petition for review of the IJ's order removing him from the United States.

---

*Cheruku v. Att'y Gen.*, 662 F.3d 198, 209 (3d Cir. 2011).  And 8 U.S.C. § 1421(a) confers upon the Attorney General the "sole authority to naturalize persons[,]" a statutory limitation on our ability to confer citizenship via naturalization.  Finally, 8 U.S.C. § 1429 forbids the naturalization of one "against whom there is outstanding a final finding of [removal]."  Accordingly, we also "clearly lack the authority to provide *nunc pro tunc* relief" when such relief "would require agency review of an alien's naturalization application while that alien is the subject of an outstanding finding of deportability or a pending removal proceeding." *Duran-Pichardo v. Att'y Gen.*, 695 F.3d 282, 288 (3d Cir. 2012) (citing *Cheruku*, 662 F.3d at 209).